Westlaw.

Not Reported in F.Supp.                                                                                                                                      Page 1
Not Reported in F.Supp., 1998 WL 164823 (S.D.N.Y.), 8 A.D. Cases 18
**(Cite as: Not Reported in F.Supp.)**

▷
Briefs and Other Related Documents
Sidor v. RenoS.D.N.Y.,1998.
United States District Court, S.D. New York.
Irene Hope SIDOR, Plaintiff,
v.
Janet RENO, Attorney General, Department of Justice, Defendant.
**No. 95 Civ. 9588(KMW).**

April 7, 1998.

Allegra Louise Fishel, New York City, Jennifer Kay Brown, Assistant United States Attorney, New York City.

### MEMORANDUM AND ORDER
BUCHWALD, Magistrate J.
*1 Plaintiff, Irene Hope Sidor ("plaintiff" or "Sidor"), brought this action under the Rehabilitation Act of 1973 alleging discriminatory treatment by the Federal Bureau of Investigation ("FBI") on account of her deafness. Plaintiff maintains that the FBI failed to accommodate her disability and improperly terminated her from the position of file clerk in the New York office on the stated ground that she posed a potential danger to herself and others. Sidor specifically disputes that "she displayed any behavior while employed with the FBI which indicated that she was dangerous to herself or others." (Am.Compl.¶ 3).

The parties have presented several issues by letter briefing. The first issue concerns the Government's request for disclosure of treatment records and a deposition of Susan Kolod, Ph.D., plaintiff's former treating psychologist. Plaintiff first sought treatment from Dr. Kolod in March-April, 1993 subsequent to her placement on suspension by the Federal Bureau of Investigation ("FBI"), but prior to her termination. Plaintiff continued to see Dr. Kolod for several years thereafter. Plaintiff maintains that Dr. Kolod's records and communications are privileged under *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996), and that since plaintiff does not intend to call Dr. Kolod as a witness or introduce her records into evidence, plaintiff has not waived the psychotherapist-patient privilege. Defendant, while not disputing the existence of a psychotherapist-patient privilege, maintains that plaintiff's mental state at the time of her termination was placed at issue by plaintiff's filing suit and that plaintiff's claim for emotional distress damages further entitles defendant to the production of all her therapy records.[FN1]

> FN1. A separate basis for the disclosure of Dr. Kolod's records surrounding the time of Sidor's suspension and termination-namely plaintiff's engagement of an expert, Dr. Glick, in the summer of 1993, to testify on the issue of whether plaintiff at the time of her termination posed a danger to herself or others-as the subject of a February 12, 1998 conference call with the parties. In that call, I ruled that the plaintiff could not avoid the disclosure of her treating psychologist's records for a contemporaneous period by hiring an expert for testimonial purposes, which was her counsel's stated intent. *See, e.g., Kerman v. City of New York,* 1997 WL 666261, at *4 (S.D.N.Y. Oct.24, 1997) ("Allowing plaintiff to selectively decide which of his psychiatric records are relevant would deny defendants the independent access to critical information which they are due under the Federal Rules."); *EEOC v. Danka Industries, Inc.,* 1997 WL 809640, at *4 (E.D.Mo. Oct.23, 1997) ("Finally, fairness requires a waiver of privilege. Plaintiffs cannot rely on advice given by certain psychotherapists to support their claims while at the same time expect to keep confidential advice given

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.                                                                 Page 2
Not Reported in F.Supp., 1998 WL 164823 (S.D.N.Y.), 8 A.D. Cases 18
**(Cite as: Not Reported in F.Supp.)**

by other psychotherapists that may weaken their claims."). This is especially true when plaintiff submitted reports from both of these professionals during the administrative phase of her dispute and referenced both of their reports in her complaint. Specifically, during the telephone conference I directed the production of Dr. Kolod's records relatively contemporaneous to and related to the FBI's termination. Plaintiff's post conference submission does not seek to reargue this ruling. In the same conference, I also stated that I would endeavor to redact from the records produced highly personal, potentially embarrassing and clearly irrelevant records. Defendant's post conference submission does not endeavor to reargue that determination. Cf. *Lanning v. Southeastern Pennsylvania Transportation Authority,* 1997 WL 597905, at *2 (E.D.Pa. Sept.17, 1997). In fact, the parties have recently submitted a confidentiality order to cover Dr. Kolod's records.

Subsequent to the Supreme Court's decision in *Jaffee,* a number of district court opinions have addressed the issue of whether a plaintiff impliedly waives her psychotherapist-patient privilege [FN2] by seeking damages for emotional distress and thereby placing her mental condition at issue. Predictably, plaintiff relies on the narrower interpretation adopted by cases such as *Vanderbilt v. Town of Chilmark,* 174 F.R.D. 225, 230 (D.Mass.1997) (limiting waiver to "use of the substance of her communications by calling her psychotherapist as a witness, for example, or by testifying to the substance of the communication herself"), while defendant relies on those authorities adopting a broader interpretation, such as *Kerman v. City of New York,* 1997 WL 666261, at *3 (S.D.N.Y. Oct.24, 1997) ("by manifestly placing his mental and emotional health at issue [by claiming mental and emotional damages] plaintiff has waived the psychotherapist-patient privilege").[FN3]

FN2. In *Jaffee,* the Supreme Court specifically noted that "[l]ike other testimonial privileges, the patient may of course waive the protection." 518 U.S. at ---- n. 14, 116 S.Ct. at 1931 n. 14.

FN3. While not dispositive, the greater number of cases are in accord in the approach of *Kerman. See* cases cited therein at 1997 WL 666261, at *3. Moreover, while plaintiff has argued that *Kerman* can be distinguished because of a concession made by plaintiff's counsel, the language of the Court's decision is far broader, and thus we conclude that the opinion is not narrowly limited.

For the following reasons, we reject the restrictive approach employed by the *Vanderbilt* court. A fundamental reason for disclosure was well-stated by the Court in *Lanning v. Southeastern Pennsylvania Transportation Authority,* 1997 WL 597905 (E.D.Pa. Sept.17, 1997):

**2** Although plaintiffs do not intend to introduce expert testimony regarding damages due to emotional distress, defendant correctly points out that plaintiffs can establish their emotional distress claim through their own testimony. Defense counsel has a right to inquire into plaintiffs' pasts for the purpose of showing that their emotional distress was caused at least in part by events and circumstances that were not job related.

1997 WL 597905, at *2 (citation omitted). *See also EEOC v. Danka Industries, Inc.,* 1997 WL 809640, at *4 (E.D.Mo. Oct.23, 1997). Moreover, as noted *supra* at n. 1, plaintiff may not in fairness select from the psychiatric testimony available and preclude defendant from learning the content of other records. In addition, it must be remembered that the issue presented here is not the same as whether a mental examination may be ordered pursuant to Rule 35 of the Federal Rules of Civil Procedure. *See, e.g., Price v. County of San Diego,* 165 F.R.D. 614, 623 (S.D.Cal.1996).

We now turn to the application of these general principles to the facts of this case. First, we find that plaintiff's mental status is basic to the events

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 3
Not Reported in F.Supp., 1998 WL 164823 (S.D.N.Y.), 8 A.D. Cases 18
**(Cite as: Not Reported in F.Supp.)**

leading to this litigation. As noted earlier, plaintiff was terminated because the FBI concluded that she posed a danger to herself and others. Plaintiff disputed that contention contemporaneously and submitted to the FBI the reports and opinions of her treating psychologist, Dr. Kolod, whose records are at issue in this motion. Moreover, plaintiff continues to dispute the basis for the FBI's decision to terminate her employment. "At no time while Sidor was employed by the FBI did she intend to physically hurt herself or others on the job." (Am.Compl.¶ 32). Plaintiff's Amended Complaint also alleges that the FBI supervisors and managers were not educated to understand the " psychosocial manifestation" of deaf individuals (¶ 21) and that the FBI "relied unlawfully upon the misunderstandings, misconceptions and biases of its employees concerning working with the deaf to justify Sidor's termination from the FBI." (¶ 74).
Thus, plaintiff's mental condition is part of this litigation by virtue of her challenge to the FBI's termination decision. Thus, as *Weinstein's Federal Evidence* treatise notes: "There is no privilege as to communications relevant to the mental or emotional condition of the patient in any proceeding in which the patient relies on the condition as an element of the patient's claim or defense." 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence,* § 504.07(7) (2d ed.1997).

Moreover, as the Weinstein treatise notes, "a claim for mental pain and suffering waive[s] protection of the ps ychotherapist-patient privilege because the claim put[s] the patient's mental condition in issue." *Id.* at § 504.07 [8]. Here plaintiff seeks damages for "her emotional pain and suffering." This is not just a "garden variety" claim as plaintiff's papers suggest. Rather, it is a more complex claim in which the views of psychiatrists figured prominently in pre-litigation events. Moreover, to the extent that plaintiff is attempting to draw a distinction between the waiver analysis applicable to records of a psychotherapist as opposed to those of a physician, there is no basis in law or logic for such a differentiation. Clearly, physicians' records can contain equally sensitive and/or embarrassing information.

*3 Finally, we recognized, as has the Weinstein treatise, that the records must be "relevant" in time and subject matter, *id.* at §§ 504.07[7]-[8], which is why we undertook to review Dr. Kolod's records *in camera.* Nonetheless, as there is some ambiguity in the submissions, plaintiff's counsel should forthwith clarify precisely what records have been submitted for *in camera* inspection, *i.e.,* have the full records been furnished?

The letters of the parties also raise two other issues which may be dealt with briefly. First, the dispute about additional records concerning other employees has been resolved. *See* letter of Jennifer K. Brown, dated March 31, 1998. Second, plaintiff objects to defendant's inquiry concerning the financial arrangement between plaintiff's mother and her counsel on the ground that it is not relevant. Plaintiff's counsel concedes that the answer to this question is not privileged in the context of the case and limits her objection to one of a failure to show threshold relevance. While I do not intend to intimate any view on the issue of whether the answers to the Government's intended line of inquiry should be held to be admissible evidence, I have concluded that the Government has made a sufficient threshold showing that the sought after information is sufficiently relevant to the witness' bias and interest to be discoverable.

In conclusion, having determined that the psychotherapist-patient privilege has been waived, I have reviewed Dr. Kolod's records and have bracketed those portions which need not be produced to defendant's counsel pursuant to the Second Confidentiality Order. Plaintiff should furnish the redacted records to defendant's counsel promptly and should clarify the scope of the records submitted for *in camera* inspection.

**IT IS SO ORDERED.**

S.D.N.Y.,1998.
Sidor v. Reno
Not Reported in F.Supp., 1998 WL 164823 (S.D.N.Y.), 8 A.D. Cases 18

Briefs and Other Related Documents (Back to top)

• 1:95cv09588 (Docket) (Nov. 09, 1995)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                                                                Page 4
Not Reported in F.Supp., 1998 WL 164823 (S.D.N.Y.), 8 A.D. Cases 18
**(Cite as: Not Reported in F.Supp.)**

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.